O

# United States District Court
# Central District of California

| | |
|---|---|
| KEIR MILAN et al.,<br><br>    Plaintiffs,<br><br>  v.<br><br>JPMORGAN CHASE BANK, N.A. et al.,<br><br>    Defendants. | Case № 2:24-cv-06323-ODW (MARx)<br><br>**ORDER GRANTING MOTION TO DISMISS SECOND AMENDED COMPLAINT [30]** |

## I.  INTRODUCTION

Plaintiffs Keir Milan and Keirco, Inc. bring this putative class action for various consumer protection violations and unjust enrichment against Defendant JPMorgan Chase Bank, N.A. ("Chase"). (Second Am. Compl. ("SAC"), Dkt. No. 27.) Chase now moves to dismiss Plaintiffs' Second Amended Complaint under Federal Rule of Civil Procedure ("Rule" or "Rules") 12(b)(6). (Mot. Dismiss ("Motion" or "Mot."), Dkt. No. 30.) For the reasons below, the Court **GRANTS** Chase's Motion and **DISMISSES** the Second Amended Complaint in its entirety.[1]

---

[1] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

## II.  BACKGROUND[2]

On May 25, 2024, Chase acquired consumer and business banking accounts from First Republic Bank ("First Republic"), including Plaintiffs' accounts. (SAC ¶ 16.) Before the acquisition, Plaintiffs used several First Republic banking features, including a Bill Pay Service ("BPS"). (*Id.* ¶ 21.) FRB's BPS allowed customers to future schedule payments, but First Republic did not withdraw the funds from payor accounts until the payee received the funds. (*Id.*) Chase offers its own BPS, but Chase withdraws the funds before the payee receives them. (*Id.* ¶ 22.)

According to Plaintiffs, Chase's early withdrawals trigger monthly service fees and overdrafts and reduce customer interest income. (*Id.* ¶ 23.) Chase does not disclose in its account agreements that its BPS operates differently from FRB's or that Chase withdraws funds from payor accounts before payees receive payment. (*Id.* ¶¶ 24–25, 77.) Chase "purposefully omit[s] this information so its customers cannot know precisely when the [BPS] amount will be funded from their accounts." (*Id.* ¶ 48; *see id.* ¶¶ 78–79.) To support these allegations, Plaintiffs provide (1) two transition letters issued by Chase, (SAC Exs. A–B ("Transition Letters"), Dkt. No. 27-1 to 27-2); (2) one Digital Service Agreement ("DSA"), (*id.* Ex. C ("DSA"), Dkt. No. 27-3); and (3) two Bill Payments and Transfer Agreements ("BPTAs"), (*id.* Ex. D ("Business BPTA"), Dkt. No. 27-4; *see id.* Ex. E ("Consumer BPTA"), Dkt. No. 27-5).

Based on these allegations, Plaintiffs initiated this putative class action on behalf of themselves and all other similarly situated individuals and corporations. (*Id.* at 1–2.) The proposed class includes all Chase clients enrolled in the BPS. (*Id.* ¶ 51(a).) The proposed subclass consists of all such clients who currently reside in California. (*Id.* ¶ 51(b).) Plaintiffs advance four causes of action: (1) violation of California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 *et seq.*; (2) violation

---

[2] All factual references derive from the Second Amended Complaint unless otherwise noted, and well-pleaded factual allegations are accepted as true for purposes of this Motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 *et seq.*; (3) violation of California's Unfair Competition Law ("UCL"), *id.* § 17200 *et seq.*; and (4) unjust enrichment.  (SAC ¶¶ 71–123.)  Chase now moves to dismiss the Second Amended Complaint in its entirety.  (*See* Mot.)

### III.   LEGAL STANDARD

A court may dismiss a complaint under Rule 12(b)(6) for lack of a cognizable theory or insufficient facts pleaded to support an otherwise cognizable legal theory. *Baliestreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).  To survive a motion to dismiss, a complaint need only satisfy the minimal notice pleading requirements of Rule 8(a)(2)—a short and plain statement of the claim.  *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003).  That is, the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).

The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.  A court is generally limited to the pleadings and must construe all "factual allegations set forth in the complaint . . . as true and . . . in the light most favorable" to the plaintiff.  *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001).  However, a court need not blindly accept conclusory allegations, unwarranted deductions of fact, and unreasonable inferences.  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

When a plaintiff's claims are fraud-based, Rule 9(b)'s heightened pleading requirements apply.  *Moore v. Kayport Package Express*, 885 F.2d 531, 540 (9th Cir. 1989); *see also* 18 U.S.C. §§ 1341, 1343.  Rule 9(b) provides, "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  "A pleading satisfies Rule 9(b) if it identifies 'the who, what, when, where, and how' of the misconduct charged."  *MetroPCS v. SD Phone Trader*, 187 F. Supp. 3d 1147, 1150 (S.D. Cal. 2016) (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097,

1106 (9th Cir. 2003)). The plaintiff must "set forth more than the neutral facts necessary to identify the transaction [and] must set forth what is false or misleading about a statement, and why it is false." *Vess*, 317 F.3d at 1106 (emphasis omitted).

## IV. DISCUSSION

Chase moves to dismiss Plaintiffs' Second Amended Complaint under Rules 9(b) and 12(b)(6). (Mot. 17–29.) It argues, among other things, that Plaintiffs fail to plead their fraud-based CLRA, FAL, and UCL claims with particularity, that Plaintiffs' CLRA claim fails as a matter of law because the BPS is not "good" or "service," that Keiro lacks CLRA standing, and that Plaintiffs' unjust enrichment claim is barred by valid contracts governing the subject matter of the dispute. (*See id.*)

**A.     CLRA (Count I)**

The CLRA prohibits "unfair methods of competition" and "unfair or deceptive acts or practices" in the sale of goods or services to consumers. Cal. Civ. Code § 1770. Conduct that is likely to mislead a reasonable consumer, such as representing that goods or services have characteristics, uses, or benefits they do not have, violates the CLRA. *Id.* § 1770(a)(5); *Colgan v. Leatherman Tool Grp.*, 135 Cal. App. 4th 663, 680 (2006).

Plaintiffs allege that Chase violated the CLRA by failing to disclose precisely when it withdraws funds to process BPS transactions. (SAC ¶ 77.) Chase moves to dismiss this claim, arguing that (1) Plaintiffs fail to plead their claim with the particularity required by Rule 9(b), (2) the claim concerns money rather than goods or services, and (3) Keirco lacks statutory standing. (Mot. 17–24.)

*1.     Heightened Pleading Under Rule 9(b)*

Rule 9(b) applies to CLRA claims sounding in fraud. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2005). Both misrepresentations and omissions are actionable under the CLRA. *See Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 834–35 (2006). To plead an actionable omission, the plaintiff must allege "the circumstances of [the] omission with specificity." *McIntyre v. Am. Honda Motor Co.*, 739 F. Supp. 3d 776, 799 (C.D. Cal. 2024). The plaintiff must identify (1) *who* made

the omission, (2) *what* information was omitted, (3) *when* the omission occurred, (4) *where* the omitted information should or could have been disclosed, and (5) *how* the omission was misleading. *See Vess*, 317 F.3d at 1106 ("Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged.").

Here, the parties do not dispute that Plaintiffs' CLRA claim sounds in fraud and must satisfy Rule 9(b)'s heightened pleading standard. Rather, they dispute whether Plaintiffs' allegations meet this standard. (*Compare* Mot. 17–19, *with* Opp'n 6–9, Dkt. No. 31.) Plaintiffs' allegations do not.

First, Plaintiffs fail to plead with particularity *what* information Chase omitted regarding its BPS transactions. To satisfy Rule 9(s)'s heightened pleading requirement, a plaintiff must "describe the content" of the alleged omission. *Eisen v. Porsche Cars N. Am., Inc.*, No. 2:11-cv-09405-CAS (FEMx), 2012 WL 841019, at *3 (C.D. Cal. Feb. 22, 2012). Thus, "[t]he plaintiff must set forth what is false or misleading about a statement, and why it is false." *Vess*, 317 F.3d at 1106. Here, Plaintiffs' broad allegations that "[n]owhere" in Chase's agreements does it disclose "when the electronic payments will be funded," and that Chase processes payments "at [its] own discretion," (*see* SAC ¶ 77), are not tied to any transaction and do not explain what part of Chase's omission makes it false or misleading. Thus, Plaintiffs' fail to allege "the circumstances of [the] omission with specificity." *McIntyre*, 739 F. Supp. 3d at 799.

Moreover, the record also indicates that, contrary to Plaintiffs' allegations, Chase does disclose "when the electronic payments will be funded." (*See* SAC ¶ 77.) Specifically, Chase discloses in the BPTAs that funds "will be deducted from [the customer's] Pay From account . . . on the Send On date." (*See, e.g.*, Business BPTA ¶ 1.E.) Plaintiffs acknowledge that the "Send On date" is "selected by the account owner." (SAC ¶ 43; *see* Opp'n 9.) Therefore, the very same BPTAs Plaintiffs rely on defeat their omission theory because the agreements expressly disclose when Chase will withdraw funds. (*See* Business BPTA ¶ 1.E; *see also* Consumer BPTA ¶ 1.E.).

1    Plaintiffs argue that Chase's on-screen disclosures are ambiguous or insufficient to alert customers of "the material consequences" of enrolling in the BPS. (Opp'n 5.) However, the BPTAs state that "[t]he Delivery Method and lead time expected for each type of payment your Payee will ordinarily receive will be indicated on screen when [the customer's] payment is scheduled." (Consumer BPTA ¶ B.3.) This provision covers the timing of Chase's withdrawals and specifies how and when Chase provides notice to consumers: "on screen" when "payment is scheduled." (*Id.*) Plaintiffs' Second Amended Complaint is silent regarding this "on screen notice."[3] They do not allege that Chase failed to display the delivery-method or lead-time information, or that the information was false or otherwise deficient or misleading. (*See generally* SAC.)

Second, Plaintiffs do not identify *where* Chase should have disclosed the withdrawal-timing information. (*See generally id.*); *Eisen*, 2012 WL 841019, at *3 (holding that a plaintiff alleging fraudulent omission must specify "where the omitted information should or could have been revealed"). Plaintiffs' failure to specify where Chase should have disclosed the withdrawal-timing information does not put Chase on notice of the misconduct charged against it. *Cf. Moore*, 885 F.2d at 540 ("A pleading is sufficient under [R]ule 9(b) if it identifies the circumstances constituting fraud so that a defendant can prepare an adequate answer from the allegations.")

Finally, Plaintiffs do not allege *how* the alleged omission would mislead a reasonable consumer. They assert that a reasonable consumer would expect Chase to withdraw funds only when the payee receives payment. (*See* SAC ¶¶ 28, 82.) However, a plaintiff alleging fraud-based claims must "explain how the claims are false" or "how the defendant intentionally misled" its customers. *Cooper v. Pickett*, 137 F.3d 616, 626–27 (9th Cir. 1997)). Here, Plaintiffs fail to explain how Chase's BPS terms could

---

[3] Plaintiffs contend that "[t]he complaint alleges" that Chase's "digital interface and [BPS] setup screen continue to represent to all users that payment will be sent on the date they select, without disclosing that funds may be withdrawn earlier." (Opp'n 19.) However, Plaintiffs' Second Amended Complaint contains no allegations regarding Chase's payment-scheduling interface or on-screen disclosures. (*See generally* SAC.)

mislead consumers about the timing of funds withdrawal. (*See generally* SAC.) In fact, and contrary to Plaintiffs' allegations, the BPTAs state that accountholders "authorize [Chase] to remove funds" on the "Send On date" and "agree to have sufficient available funds on the Send On date or Payment date." (Consumer BPTA ¶ 1.3.A.1.) Plaintiffs do not explain how this provision would mislead a consumer into believing that Chase will withdraw funds only upon payment delivery. Nor do they explain how the alleged omission was "false and misleading." *Asghari v. Volkswagen Grp. of Am., Inc.*, 42 F. Supp. 3d 1306, 1325 (C.D. Cal. 2013).

In sum, Plaintiffs fail to adequately plead the "what," "where," or "how" of their CLRA claim and fail to satisfy Rule 9(b)'s heightened pleading standard. Accordingly, the Court **DISMISSES** Plaintiffs' first cause of action on this ground.

In the interest of completeness and judicial efficiency, the Court nevertheless addresses Chase's two additional grounds for dismissal under Rule 12(b)(6). *See New Day Worldwide Inc. v. Swift*, No. 2:19-cv-09948-AB (SSx), 2020 WL 6050700, at *2 (C.D. Cal. July 21, 2020) (considering additional grounds for dismissal under Rule 12(b)(6) notwithstanding dismissal on threshold basis), *aff'd sub nom. Grahan v. Swift*, No. 20-55779, 2022 WL 576024 (9th Cir. Feb. 25, 2022).

  2. *Chase's BPS as a "Good" or "Service"*

Chase next argues that Plaintiffs' CLRA claim fails because it concerns money, not "goods" or "services." (Mot. 20–23.) Plaintiffs respond that their claim concerns Chase's alleged "misrepresentation and mismanagement" of the BPS. (Opp'n 10–12.)

By its terms, the CLRA applies only to transactions involving the "sale or lease of goods or services to any consumer." Cal. Civ. Code § 1770. The statute defines "goods" as "tangible chattels bought or leased for use primarily for personal, family, or household purposes." *Id.* § 1761(a). It defines "services" as "work, labor, and services for other than a commercial or business use, including services furnished in connection with the sale or repair of goods." *Id.* § 1761(b).

Courts interpreting these provisions have consistently held that purely financial transactions fall outside the CLRA's scope. For example, a financial institution's act of extending lines of credit to consumers does not constitute a "service" under the statute. *Berry v. Am. Express Publ'g, Inc.*, 147 Cal. App. 4th 224, 233 (2007). As *Berry* explained, early drafts of the CLRA included the terms "money" and "credit," but the Legislature deliberately removed them before enactment—a decision that "strongly counsels" against expanding the statute to reach transactions involving money or credit unrelated to the sale or lease of goods or services. *Id.* at 230–31.

Here, Plaintiffs allege that the BPS is a "good" under the CLRA. (SAC ¶ 72.) However, in their opposition brief, Plaintiffs argue that the BPS is a "service." (Opp'n 10–12.) The BPS is neither a "good" nor a "service" covered under the CLRA. Intangible items, such as bank accounts, are not "goods" or "services" within the meaning of the CLRA, and "ancillary services" provided in connection with such an intangible item do not bring the transaction within the CLRA's scope. *Fairbanks v. Superior Court*, 46 Cal. 4th 56, 65 (2009). Plaintiffs identify no transaction for the "sale or lease" of the BPS, as would be applicable to a CLRA good. (SAC ¶¶ 71–84); s*ee* Cal. Civ. Code § 1770. The BPS is also not a covered "service" under the CLRA. Plaintiffs' CLRA claim concerns the timing of the movement of *money* from their bank deposit accounts. (*See, e.g.*, SAC ¶¶ 46–48, 77 (alleging that Chase does not alert customers "when electronic payments will be funded from their accounts); *see also* Opp'n 22 (alleging that Chase "debits funds early").) The BPS is, at most, an "ancillary service" provided in connection with an intangible item. *Fairbanks*, 46 Cal. 4th at 65. As the BPS concerns the movement of money or ancillary monetary transactions, Plaintiffs' claim necessarily falls outside the CLRA's scope.

The Court therefore concludes that Plaintiffs fail to state a claim for relief under the CLRA, independent of their Rule 9(b) pleading deficiencies.

### 3. Keirco's Statutory Standing

Chase next argues that Keirco lacks statutory standing to assert a CLRA claim because it is a corporation, not a "consumer." (Mot. 23–24; Reply 11–12, Dkt. No. 32.) Plaintiffs respond that the CLRA should be construed broadly and that Keirco should be treated the same as any individual because "[t]he nature of [the BPS] is identical whether used by an individual or a small business like Keirco." (Opp'n 12.)

Only a "consumer" may bring a CLRA claim. Cal. Civ. Code § 1780(a); *see Blair v. Mercedes-Benz of N. Am., Inc.*, 914 F.2d 261, 262 (9th Cir. 1990). Courts have consistently held that the CLRA excludes corporate entities from its definition of "consumers." *See Cooper v. Simpson Strong-Tie Co.*, 460 F. Supp. 3d 894, 912 (N.D. Cal. 2020) (dismissing CLRA claim because the statute excludes corporations from the definition of "consumers"). As the Ninth Circuit has explained, "[t]he CLRA distinguishes between an 'individual' and a 'corporation," and this distinction reflects the Legislature's intent to cabin standing under the CLRA "to individuals, not to corporations." *Blair*, 914 F.2d at 262.

Here, Keirco is a California corporation. (SAC ¶ 31.) As a business entity, Keirco is not "an individual" under the CLRA. *See Cooper*, 460 F. Supp. 3d at 912. Thus, Keirco lacks statutory standing to sue under the CLRA.

In sum, Plaintiffs fail to state a viable claim under the CLRA. First, Plaintiffs' fail to meet Rule 9(b)'s heightened pleading standard, as they do not specify the who, what, and where of the alleged fraud. Next, the CLRA applies only to the sale or lease of goods or services, and Plaintiffs identify no such transaction involving Chase's BPS. As the BPS concerns the movement of money, not goods or services, it falls outside of the CLRA's scope. Finally, Keirco, as a corporate entity, lacks statutory standing under the CLRA, which extends only to individual consumers. Accordingly, the Court **DISMISSES** Plaintiffs' first cause of action.

### B.     FAL (Count II)

Plaintiffs allege that Chase violated the FAL by disseminating "untrue or misleading statements" about the BPS. (SAC ¶¶ 85–97.) Chase argues that Plaintiffs fail to meet Rule 9(b)'s particularity standard and do not identify any actionable "advertisement." (Mot. 17–19, 25–26.) The Court addresses each argument in turn.

####      1.     Heightened Pleading Under Rule 9(b)

The FAL makes it "unlawful for a business to disseminate any statement which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." *Arevalo v. Bank of Am. Corp.*, 850 F. Supp. 2d 1008, 1023–24 (N.D. Cal. 2011) (internal quotation marks omitted) (quoting *Ariz. Cartridge Remanufacturers Ass'n, Inc. v. Lexmark Int'l, Inc.*, 421 F.3d 981, 985 (9th Cir. 2005)). Courts interpret the statute "broadly to encompass not only advertising which is false," but also true advertising which is "either actually misleading or which has a capacity, likelihood, or tendency to deceive or confuse the public." *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1162 (9th Cir. 2012) (citation modified).

Here, Plaintiffs allege that Chase engaged in unfair and deceptive conduct by affirmatively misrepresenting material facts and concealing critical information about how the BPS would operate after First Republic's accounts transition to Chase, conduct intended to mislead customers regarding the nature and operation of the BPS. (*See* SAC ¶¶ 85–97.) Accordingly, Plaintiffs base their FAL claim on a false representation, and it is thus "grounded in fraud" and must satisfy Rule 9(b)'s heightened pleading standard. *See Davidson v. Kimberly–Clark Corp.*, 889 F.3d 956, 964 (9th Cir. 2018) (noting that FAL claims grounded in fraud must satisfy Rule 9(b)).

Plaintiffs base their FAL claim on the same factual allegations as their CLRA claim. (*Compare* SAC ¶¶ 75–82, *with id.* ¶¶ 86–94.) As discussed above, Plaintiffs fail to plead with particularity the "what," "where," and "how" of the alleged fraud. Thus, their FAL claim suffers from the same pleading deficiencies as their CLRA claim and fails to satisfy Rule 9(b)'s heightened pleading standard.

### 2. Chase's "Advertisements"

Plaintiffs' FAL claim also fails because they do not identify any actionable "advertisement." The FAL prohibits "induc[ing] the public to enter into any obligation" through "a statement that is untrue or misleading." *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 867 (9th Cir. 2018) (internal quotation marks omitted). To be actionable, a statement must be (1) widely disseminated to the public, and (2) likely to influence consumers to purchase goods or services. Cal. Bus. & Prof. Code § 17500.

Here, Plaintiffs identify two categories of allegedly misleading materials: (1) the Transition Letters Chase sent to Plaintiffs, and (2) Chase's DSA and BPTAs. (*See* SAC ¶¶ 86–88.) Neither category qualifies as an "advertisement" under the FAL.

First, the Transition Letters do not qualify as advertisements under the FAL. Chase sent the letters directly to Plaintiffs, after acquiring—but before migrating—their accounts from FRB. (*Id.* ¶¶ 11, 14; *see* Transition Letters.) Plaintiffs do not allege that Chase distributed these letters to the public or used them in any advertising campaign. (*See generally* SAC.) Without allegations plausibly showing that the letters were disseminated to the public and likely to influence consumers to use the BPS, they cannot qualify as actionable advertisements under the FAL. Cal. Bus. & Prof. Code § 17500

Second, the DSA and BPTAs are likewise not actionable as advertisements. The FAL regulates public-facing statements intended to induce consumer transactions. *See Hodsdon*, 891 F.3d at 867. Contracts like the DSA and BPTAs, by contrast, formalize existing relationships between parties and reflect terms negotiated after a consumer has already been persuaded to engage in a transaction. *See Prager Univ. v. Google LLC*, 951 F.3d 991, 1000 (9th Cir. 2020) (noting that "contracts are not advertisements or a promotional campaign"). Here, Plaintiffs do not allege that these agreements were presented to them, or to the public, in connection with any advertising campaign initiated by Chase. (*See generally* SAC.) They similarly do not allege that statements contained in a private contract are somehow actionable advertising under the FAL. (*See generally id.*); *see Sanchez v. Navy Fed. Credit Union*, No. 5:23-cv-00285-JGB (KKx),

2023 WL 6370235, at *9 (C.D. Cal. Aug. 14, 2023) (questioning whether "a statement contained inside a contract is actionable under the FAL"). As Plaintiffs fail to plausibly establish that the DSA or the BPTAs are actionable advertisements, they fail to state a claim under the FAL.

In sum, Plaintiffs fail to state a claim under the FAL because their allegations fail to meet Rule 9(b)'s heightened pleading standard and are insufficient to plausibly establish the existence of an actionable advertisement under the FAL. Accordingly, the Court **DISMISSES** Plaintiffs' second cause of action.

### C.   UCL (Count III)

The UCL prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. The statute provides a separate and distinct theory of liability under each of the three prongs: "unlawful," "unfair," and "fraudulent." *Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 731 (9th Cir. 2007)).

Here, Plaintiffs allege that Chase engaged in fraudulent, unlawful, and unfair business practices in violation of the UCL by failing to disclose when it withdraws funds from payor accounts. (*See* SAC ¶¶ 98–118.) Chase argues that Plaintiffs' UCL claim fails because (1) the fraudulent-prong claim does not meet Rule 9(b)'s particularity standard, (2) the unlawful-prong claim is derivative of, and fails with, Plaintiffs' CLRA and FAL claims, and (3) the unfair-prong claim merely repeats the same allegations as Plaintiffs' fraudulent- and unfair-prong claims. (Mot. 17–19, 24–25.) Plaintiffs respond that they adequately plead each prong and that, even if one prong fails, the other prongs "would still stand." (Opp'n 13–19.)

*1.   Fraudulent-Prong Claim*

UCL's fraudulent prong requires Plaintiffs to "state with particularity the circumstances constituting fraud." *Kearns*, 567 F.3d at 1124. Here, Plaintiffs' fraudulent-prong allegations mirror their CLRA and FAL allegations. (*Compare* SAC ¶¶ 76–80, 87–91, *with id.* ¶¶ 100–05, 110–12.) As discussed above, Plaintiffs fail to

plead the alleged fraud with specificity. Accordingly, the Court finds that Plaintiffs' UCL fraudulent-prong claim fails for the same reasons as their CLRA and FAL claims.

*2. Unlawful-Prong Claim*

The unlawful prong "borrows violations of other laws" and treats them as independently actionable unlawful business practices. *Farmers Ins. Exch. v. Superior Court*, 2 Cal. 4th 377, 383 (1992). However, a plaintiff must plead a predicate violation of law. *See Krantz v. BT Visual Images, L.L.C.*, 89 Cal. App. 4th 164, 178 (2001) (noting that the viability of an unlawful-prong claim depends on whether the underlying causes of action survive). Here, Plaintiffs predicate their UCL claim on Chase's alleged violations of the CLRA and FAL. (SAC ¶¶ 107–08, 110; Opp'n 13–19.) As discussed above, both claims fail. Therefore, Plaintiffs' UCL unlawful-prong claim lacks a legal anchor and necessarily fails with their predicate causes of action.

*3. Unfair-Prong Claim*

Courts consistently hold that "the unfair prong of the UCL cannot survive if the claims under the other two prongs of the UCL do not survive." *Milliam v. Energizer Brands, LLC*, No. 5:21-cv-01500-JWH (SHKx), 2022 WL 19001330, at *7 (C.D. Cal. Dec. 9, 2022); *see In re Actimmune Mktg. Litig.*, No. 3:08-cv-02376-MHP, 2009 WL 3740648, at *14 (N.D. Cal. Nov. 6, 2009) (dismissing the UCL unfair-prong claim where the plaintiffs' "unfair prong claims overlap entirely with their claims of fraud"), *aff'd*, 464 F. App'x 651 (9th Cir. 2011).

Here, Plaintiffs' unfair-prong claim mirrors their underlying fraudulent- and unlawful-prong claims. (*See* SAC ¶¶ 104–115; Opp'n 20–23.) Plaintiffs allege that Chase's practices are "unfair" because it withdraws funds from payor accounts earlier than disclosed. (SAC ¶¶ 107, 110–11, 113.) In their opposition brief, Plaintiffs clarify that this conduct reflects an "unfair business practice" intended to mislead consumers and "force them to bear the brunt of costs." (Opp'n 16.) However, Plaintiffs' alleged "unfairness" is indistinguishable from the alleged deception. As such, Plaintiffs'

unfair-prong claim is not independently viable and fails alongside Plaintiffs' other UCL theories. *Milliam*, 2022 WL 19001330, at *7.

In sum, Plaintiffs fail to state a claim under any UCL prongs. Accordingly, the Court **DISMISSES** Plaintiffs' third cause of action.

### D. Unjust Enrichment (Count IV)

Plaintiffs also allege that Chase prematurely withdraws funds from customer accounts before sending payments to designated payees, thereby earning interest for itself and triggering overdraft and account fees that unjustly enrich Chase at Plaintiffs' expense. (SAC ¶¶ 119–23.) Chase argues that the unjust enrichment claim is barred by valid contracts governing the parties' relationship and their dispute. (Mot. 28–29.)

Courts are divided on whether California recognizes unjust enrichment as an independent cause of action. *See ESG Cap. Partners, LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016) ("Some California courts allow a plaintiff to state a cause of action for unjust enrichment, while others have maintained that California has no such cause of action.") Given this uncertainty, courts generally treat such claims as quasi-contract claims for restitution. *Id.* at 1038–39. However, an unjust enrichment or claim "cannot lie" where a valid express contract governs the same subject matter. *Rutherford Holdings, LLC v. Plaza Del Rey*, 223 Cal. App. 4th 221, 231 (2014) (citation omitted).

Here, Plaintiffs' do not dispute that valid written agreements govern the terms of the BPS. (*See* SAC ¶¶ 35, 37–38 (alleging that the DSA "frequently" addresses the BPS, and that the BPTAs specifically govern its operation); Opp'n 20 (acknowledging that Plaintiffs "may have agreed to certain terms and conditions to access Chase accounts").) As valid express contracts govern Chase's relationship with Plaintiffs and the subject matter of the parties' dispute, Plaintiffs' unjust enrichment claim is therefore barred as a matter of law. *See Kouball v. Seaworld Parks & Ent., Inc.*, No. 20-cv-56069, 2020 WL 4947877, at *1 (9th Cir. Oct. 25, 2021) (holding that a claim for unjust enrichment "is barred where a contract governs the dispute between the parties").

Moreover, Plaintiffs' unjust enrichment claim is premised on the same facts and seeks the same relief as their fraud-based consumer protection claims. (SAC ¶¶ 121–23.) As Plaintiffs' underlying claims fail, so too does their unjust enrichment claim. *See Brown v. Brita Prods., Co.*, No. 2:23-cv-07851-DMG (RAOx), 2024 WL 4815354, at *6 (C.D. Cal. Sept. 30, 2024) (holding that if "statements are not actionable under the UCL, FAL, and CLRA," they "cannot form the basis" of an unjust enrichment claim).

Plaintiffs offer several arguments to save their claim. First, they contend that "no express agreement governs or discloses the precise conduct at issue." (Opp'n 20.) However, the relevant inquiry is not whether a contract addresses every act alleged, but whether "there exists between the parties a valid express contract covering the same subject matter." *See Rutherford*, 223 Cal. App. 4th at 231. As discussed above, the DSA and BPTAs govern the BPS and the parties' relationship.

Second, Plaintiffs argue they are "entitled to plead unjust enrichment in the alternative to breach of contract." (Opp'n 20.) While parties may "plead in the alternative, the allegation of binding contracts nullifies the unjust enrichment claim." *Lindner v. Occidental Coll.*, No. 2:20-cv-8481-JFW (RAOx), 2020 WL 7350212, at *9 (C.D. Cal. Dec. 11, 2020). A plaintiff "may not recover on both claims that an enforceable, binding contract exists and unjust enrichment, but it may plead both as alternatives to one another." *Cosmonova, LLC v. BioFilm, Inc.*, 763 F. Supp. 3d 1157, 1171 (S.D. Cal. 2025). Here, Plaintiffs' do not dispute that valid written agreements govern the terms of the BPS. (*See* SAC ¶¶ 35, 37–38.) Moreover, Plaintiffs concede that they "purposefully omitted" the breach of contract claim from their Second Amended Complaint. (Opp'n 1 n.1.) As Plaintiffs did not plead a breach of contract claim in their Second Amended Complaint, (*see* SAC ¶¶ 71–123), they cannot plead unjust enrichment in the "alternative[]," *see Cosmonova*, 763 F. Supp. 3d at 1171.

In sum, Plaintiffs' unjust enrichment claim is barred by valid contracts governing their relationships with Chase and the subject matter of the dispute. Accordingly, the Court **DISMISSES** Plaintiffs' fourth cause of action.

**E.     Leave to Amend**

Where a court grants a motion to dismiss, it should generally provide leave to amend unless it is clear that amendment would be futile. *See* Fed. R. Civ. P. 15(a); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Leave to amend may be denied if "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986).

Despite ample opportunity to state viable claims, Plaintiffs again fail to do so. In dismissing the CLRA, FAL, and UCL claims in the First Amended Complaint, the Court identified the pleading deficiencies and explained how to cure them. (*See* Order Grant. Mot. Dismiss 5–11, Dkt. No. 26.) As Plaintiffs' Second Amended Complaint suffers from the same pleading defects, the Court finds that further amendment would be futile. *Schreiber*, 806 F.2d at 1401. Accordingly, the Court **DECLINES** to grant leave to amend.

## V.     CONCLUSION

For the reasons discussed above, the Court **GRANTS** Chase's Motion to Dismiss, (Dkt. No. 30), and **DISMISSES** Plaintiffs' Second Amended Complaint **WITHOUT LEAVE TO AMEND** and **WITH PREJUDICE**. The Court will issue judgment consistent with this order.

**IT IS SO ORDERED.**

November 26, 2025

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**